## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re *Ex Parte* Application of HID TEXTILE SERVICES SARL<br><br>    Applicant,<br><br>for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings | Misc. No. |

## MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION OF HID TEXTILE SERVICES SARL FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN <u>DISCOVERY FOR USE IN FOREIGN PROCEEDINGS</u>

*Of Counsel:*

**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**

Lionel M. Lavenue
*(pro hac vice application forthcoming)*
1875 Explorer Street, Suite 800
Reston, VA 20190
Phone: (571) 203-2700
Fax: (202) 408-4400

**SMITH, KATZENSTEIN & JENKINS LLP**

Daniel A. Taylor (No. 6934)
Neal C. Belgam (No. 2721)
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
dtaylor@skjlaw.com
nbelgam@skjlaw.com

*Attorneys for Applicant HID Textile Services SARL*

Dated: August 4, 2023

## <u>TABLE OF CONTENTS</u>

I.     NATURE AND STAGE OF PROCEEDINGS.................................................1

II.    SUMMARY OF ARGUMENT.........................................................................2

III.   STATEMENT OF FACTS.................................................................................2

    A.    The Parties and the Datamars EU Litigations.......................................2

    B.    HID Textile's Proposed Discovery .......................................................5

IV.    ARGUMENT.....................................................................................................6

    A.    HID Textile's Application Satisfies § 1782's Statutory
          Requirements...........................................................................................6

    B.    The *Intel* Discretionary Factors Weigh in Favor of Granting
          HID Textile's Application..................................................................15

          1.    Datamars Is Not a Participant in the Datamars EU
                  Litigations. ............................................................................16

          2.    French, Germany, and Dutch Courts Are Receptive to
                  Information Obtained Through United States Discovery.........17

          3.    HID Textile Is Not Attempting to Circumvent Foreign
                  Proof-Gathering Restrictions or Policies. ...............................21

          4.    The Scope of Information HID Textile Seeks is
                  Commensurate with the Information's Relevance to the
                  Datamars EU Litigations and Will Not Unduly Burden
                  Datamars. ...............................................................................23

V.     CONCLUSION................................................................................................26

## **TABLE OF AUTHORITIES**

**Cases**

*Cryolife, Inc. v. Tenaxis Med., Inc.*, No. C08-05124 HRL, 2009 WL 88348 (N.D. Cal. Jan. 13, 2009) ............................................................................................19

*Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095 (2d Cir. 1995) .........................18

*First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16 (2d Cir. 1998) .................24

*Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591 (7th Cir. 2011).......... 6, 7, 19

*High Point Sarl v. Sprint Nextel Corp.*, No. 09-2269-CM-DJW, 2011 WL 3241432 (D. Kan. Jul. 29, 2011) ...........................................................................................14

*In re Application of Gilead Pharmasset LLC*, No. 14-mc-243, 2015 WL 1903957 (D. Del. Apr. 14, 2015)....................................................................... 6, 7, 17

*In re Application of Sveaas*, 249 F.R.D. 96 (S.D.N.Y. 2008) ............................8, 18

*In re Bayer AG*, 146 F.3d 188 (3d Cir. 1998).................................................. 7, 9, 23

*In re Belparts Grp., N.V.*, No. 3:21-MC-0062 (VAB), 2021 WL 4942134 (D. Conn. Oct. 22, 2021) ..........................................................................................17

*In re Chevron Corp.*, 633 F.3d 153 (3d Cir. 2011)......................................... 16, 21

*In re Consellior SAS*, No. 13 MC 34, 2013 WL 5517925 (D. Conn. Oct. 2, 2013) .............................................................................................................................24

*In re Duizendstraal*, No. 3:95-MC-150-X, 1997 U.S. Dist. LEXIS 16506, 1997 WL 195443 (N.D. Tex. 1997) ...............................................................................20

*In re Esses*, 101 F.3d 873 (2d Cir. 1996)..............................................................21

*In re Ex Parte Application of Societe d'Etude de Realisation et d'Exploitation Pour le Traitement du Mais*, No. 13-MC-0266, 2013 WL 6164435 (E.D. Pa. Nov. 22, 2013) ......................................................................................................18

*In re Judicial Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd.*, No. 2:14-cv-00797, 2015 U.S. Dist. LEXIS 72544, 2015 WL 3439103 (D. Nev. May 28, 2015), ECF No. 14 .................................................................................20

*In re Liverpool Ltd. P'ship*, No. 21-MC-86-CFC, 2021 WL 3793901, 2021 U.S. Dist. LEXIS 161565 (D. Del. Aug. 26, 2021) .......................................................... 8

*In re MacDonell*, No. 2:17-MC-00189, 2017 WL 6448050 (E.D. Cal. Dec. 15, 2017) ...................................................................................................... 18, 22

*In re Mota*, No. MC 19-00369, 2020 WL 95493 (D. Del. Jan. 8, 2020) ................. 23

*In re MSTG, Inc.*, 675 F.3d 1337 (Fed. Cir. 2012) ............................................... 14

*In re Top Matrix Holdings Ltd.*, No. 18 MISC. 465 (ER), 2020 WL 248716 (S.D.N.Y. Jan. 16, 2020) ................................................................................. 17

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ............... passim

*INVISTA N. Am. S.a.r.l. v. M & G USA Corp.*, No. 11-1007-SLR-CJB, 2013 WL 1867345 (D. Del. Mar. 28, 2013) ..................................................................... 21

*John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132 (3d Cir. 1985) ................................ 7

*McKevitt v. Pallasch*, 339 F.3d 530 (7th Cir. 2003) .............................................. 15

*Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, No. 1:08-CV-269 (LEK/RFT), 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) .................................................................. 19

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) .................................... 24

*Pfaff v. Deutsche Bank AG*, No. 20 MISC. 25 (KPF), 2020 WL 3994824 (S.D.N.Y. July 15, 2020) ................................................................................................... 19

*Sciele Pharma, Inc. v. Lupin, Ltd.*, No. 09-37, 2013 WL 12161442 (D. Del. Jan. 31, 2013) ......................................................................................................... 14

*ZF Auto. US, Inc. v. Luxshare, Ltd.*, 142 S. Ct. 2078 (2022) .................................. 8

**Statutes**

35 U.S.C. § 102(b)(1) ............................................................................................. 8

Code de la Propriété Intellectuelle [I.P.C.] [Intellectual Property Code] art. L611 .. 7

European Patent Convention [EPC] art. 54 ............................................................. 8

European Patent Convention [EPC] art. 55 ............................................................. 8

Patentgesetz [PatG] [Patent Act] § 3 .........................................................................8

Rijksoctrooiwet [ROW] [Patent Act] art. 75 ............................................................8

**Other Authorities**

Aurelian Moraru et al., *A New Washable UHF RFID Tag: Design, Fabrication, and Assessment*, Sensors 20:3451 (2020).............................................................9

Aurelian Moraru et al., *Passive RFID Tags for Textile Items – Requirements and Solutions*, 2018 International Symposium on Fundamentals of Electrical Engineering (2018) .............................................................................................9, 10

Aurelian Moraru et al., *RFID System with Passive RFID Tags for Textiles*, 10th Int'l Symp. on Advanced Topics in Elec. Eng'g (2017) ......................................10

Datamars Textile ID, *UHF LaundryChip^TM 401*, YouTube (Nov. 12, 2018), https://youtu.be/zOLI_MXWhSs ..........................................................................9

*New UHF LaundryChip 401 by DATAMARS Textile Id*, El Mundo del ADC (Mar. 14, 2017), http://www.elmundodeladc.com/datamars-laundrychip-401/ .............9

## I.    NATURE AND STAGE OF PROCEEDINGS

Applicant HID Textile submits this *Ex Parte* Application for an Order to

Obtain Discovery for Use in five different Foreign Proceedings in France,

Germany, Netherlands pursuant to 28 U.S.C. § 1782(a). HID Textile seeks an order

to authorize subpoenas requiring Respondent Datamars, Inc., a Delaware

corporation, to provide specific documents and make itself available for a

deposition for use in connection with these five foreign patent ligations: three

patent infringement proceedings in France ("Datamars French Litigations") filed

by Datamars, Inc.'s affiliate Datamars SA against HID Textile, a nullity

proceeding ("Datamars German Litigation") in Germany filed by HID Textile

seeking to invalidate the German part of European Patent No. EP 3,639,204 ("EP

204 Patent") with the German patent registration no., DE 60 2017 052 028, and

another nullity proceeding ("Datamars Dutch Litigation") in the Netherlands also

filed by HID Textile against Datamars SA to invalidate the Dutch part of EP 204

Patent (collectively, the "Datamars EU Litigations").[1] In the context of this global

patent litigation, HID Textile comes to the United States seeking targeted and

routinely granted discovery pursuant to § 1782 to help it defend itself in the

Datamars EU Litigations. HID Textile seeks an order to authorize subpoenas

---

[1] Nullity proceedings in Germany and the Netherlands are the equivalent of an invalidity defense or counterclaim in the United States but are filed as separate lawsuits.

requiring Datamars, Inc. to provide specific documents and make itself available for a deposition for use in connection with the Datamars EU Litigations instigated by Datamars SA. *See* Application, Exs. A, B.

## II.   SUMMARY OF ARGUMENT

1.     HID Textile's Application satisfies § 1782's statutory requirements, because Respondent Datamars, Inc. is found within the District, the information sought is "for use" in the foreign proceedings, and Applicant HID Textile is an interested entity as a party in each of the foreign proceedings; and

2.     The discretionary factors favor of granting the Application, because Respondent Datamars, Inc. is not a participant in the foreign proceedings, each of the foreign courts are receptive to the information obtained through discovery in the United States, HID Textile is not attempting to circumvent proof-gathering restrictions or policies in the foreign courts, and the information sought is relevant and not "unduly intrusive or burdensome" in scope.

## III.   STATEMENT OF FACTS

### A.   The Parties and the Datamars EU Litigations

HID Textile designs and develops textile and fabric inventory management and process flow solutions that use RFID technology and cloud-enabled technology to help businesses such as laundromats, hotels, casinos, resorts, hospitals, and nursing home control their linen and uniform inventory. HID Textile is a corporation organized under the laws of France with its principal place of business at 180 Voie Ariane Athelia 1, 13600 La Ciotat, France.

Datamars, Inc. is incorporated in Delaware with U.S. offices in Temple, Texas; Mineral Wells, Texas; and Woburn, Massachusetts. *See* Lavenue Decl., Ex. 7; *id.*, Ex. 8 at 2, 3. Datamars, Inc. is a wholly owned subsidiary of Datamars SA, a Swiss company. Lavenue Decl., Ex. 18. Together they provide livestock management, pet identification, and textile identification services and products.

On information and belief, in 2022, Datamars SA acquired a portfolio of patents from Promar Textil Industries S.R.L ("Promar"), including at least the EP 204 Patent and its U.S. counterpart, U.S. Patent No. 11,128,027 ("'027 Patent"). The portfolio is generally related to an RFID tag embedded in textile products comprising an antenna in a double loop configuration. *See* '027 Patent, claim 1. Using the EP 204 Patent included in this portfolio, Datamars SA has launched a coordinated series of lawsuits against HID Textile since February 2023:

1) Paris, France, on February 27, 2023, conducting an infringement-seizure at HID Textile's premises in La Ciotat, France;[2]

2) Paris, France, Case No. RG 23/05607, on April 14, 2023, accusing HID Textile and its Malaysian affiliate, HID Global SDN. BHD., of infringing the EP 204 Patent;[3] and

3) Paris, France, Provisional Case No. 23/A7269, on April 14, 2023, applying for a preliminary injunction on HID Textile with a hearing scheduled for September 19, 2023.[4]

---

[2] Roux-Vaillard Decl., ¶ 8.
[3] The original complaints in this French proceeding in French and English languages are attached as Exhibits 1 and 2 to the accompanying Lavenue Declaration.
[4] Roux-Vaillard Decl., ¶ 11.

To defend itself from anticipated offensive actions by Datamars SA in Germany and the Netherlands, HID Textile filed the following nullity actions:

1) Munich, Germany, Case No. 6 Ni 21/23 (EP), on May 30, 2023, challenging validity of the EP 204 Patent and its German counterpart, DE 60 2017 052 028 B4 ("DE 028 Patent");[5] and

2) Hague, Netherlands, Case No. C/09/649174, on June 19, 2023, challenging validity of the EP 204 Patent.[6]

The following table lists specific details of each proceeding:

| Country (Date Filed) | Case No. | Type | Plaintiff | Defendant(s) | Patent(s) Involved |
|---|---|---|---|---|---|
| France (Feb. 27, 2023) | N/A[7] | Infringement Seizure Action | Datamars SA | HID Textile; HID Global SDN. BHD. | EP 204 Patent |
| France (Apr. 14, 2023) | RG 23/05607 | Infringement Action | Datamars SA | HID Textile; HID Global SDN. BHD. | EP 204 Patent |
| France (Apr. 14, 2023) | 23/A7269 | Preliminary Injunction | Datamars SA | HID Textile; HID Global SDN. BHD. | EP 204 Patent |
| Germany (May 30, 2023) | 6 Ni 21/23 (EP) | Nullity Action | HID Textile | Datamars SA | EP 204 Patent; DE 60 2017 052 028 |

---

[5] The original complaint in the Datamars German Litigation and an English-language machine translation are attached as Exhibits 3 and 4 to the accompanying Lavenue Declclaration.

[6] The original complaint in the Datamars Dutch Litigation and an English-language machine translation are attached as Exhibits 5 and 6 to the accompanying Lavenue Declaration.

[7] An infringement seizure action in France is an *ex parte* request with no case number.

| Netherlands (Jun. 19, 2023) | C/09/647174 | Nullity Action | HID Textile | Datamars SA | EP 204 Patent |
|---|---|---|---|---|---|

## B.   HID Textile's Proposed Discovery

HID Textile seeks specific information from Datamars, Inc. that is highly relevant to HID Textile's invalidity/nullity positions in the Datamars EU Litigations. *See, e.g.*, Roux-Vaillard Decl., ¶ 14. However, the EU proceedings do not provide discovery processes such as those available in American courts, and the relevant courts cannot compel production of highly relevant documents and information. from Datamars SA. *See, e.g.*, *id.*, ¶¶ 17-18. HID Textile accordingly seeks targeted discovery here. In particular, subpoenas including targeted discovery requests HID Textile seeks leave to serve on Datamars, Inc. are attached to the Application as Exhibits A and B, for documents and deposition testimony, respectively. HID Textile seeks documents and information about:

1) the first sale or offer for sale of any products that practice or may practice the patents at issue in the Datamars EU Litigations and how such products practice the patents, including, but not limited to, the LaundryChip line of products (e.g., LaundryChip 401, LaundryChip 403) or other products marked as practicing the patents at issue;

2) public disclosure, advertisement, announcement, public availability, or public use of any features claimed in the EP 204 Patent or the '027 Patent, including the "double loop" feature, prior to June 16, 2017, the earliest possible priority date of the EP 204 Patent; and

3) acquisition(s), purchase(s), licensing, or assignment(s) of the '027 Patent, the EP 204 Patent, or their corresponding applications, including from Promar Textil Industries S.R.L. ("Promar"), the

> original assignee and/or applicant for the '027 Patent and the EP 204
> Patent.

*See* Application, Exs. A, B.

This information has not been produced in the Datamars EU Litigations, yet

it is critical for HID Textile's arguments and defenses for the reasons explained

below. *E.g.*, Roux-Vaillard Decl., ¶ 14.

## IV.   ARGUMENT

### A.   HID Textile's Application Satisfies § 1782's Statutory Requirements.

Section 1782, entitled "Assistance to foreign and international tribunals and

to litigants before such tribunals," authorizes federal district courts to order

discovery to assist applicants, such as HID Textile, in gathering evidence for use in

foreign tribunals. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247

(2004). The purpose of this provision is to permit a party to a litigation in a foreign

country to "seek discovery relating to that litigation in a federal district court, and,

in the discretion of that court," to "obtain as much discovery as it could if the

lawsuit had been brought in that court rather than abroad." *Heraeus Kulzer, GmbH

v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011) (citations omitted). Section 1782

aims to "provid[e] efficient means of assistance to participants in international

litigation." *In re Application of Gilead Pharmasset LLC*, No. 14-mc-243, 2015 WL

1903957, at *2 (D. Del. Apr. 14, 2015) (citations omitted); *see also John Deere*

*Ltd. v. Sperry Corp.*, 754 F.2d 132, 135 (3d Cir. 1985) ("28 U.S.C. § 1782 reflects a determination on the part of Congress to broaden the scope of international judicial assistance afforded by the federal courts." (citing S. Rep. No. 88-1580)).

Discovery under § 1782 is as broad as discovery obtained during ordinary district court litigation. *See In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998) ("The reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is sought under the statute."). Moreover, "Section 1782(a) does not limit the provision of judicial assistance to 'pending' adjudicative proceedings," but allows discovery for use in foreign proceedings that have not yet commenced. *Intel*, 542 U.S. at 258.

Based on the language of § 1782, courts may grant an application when the following statutory requirements are satisfied: (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery be for use in a proceeding before a foreign tribunal, and (3) the application be made by an interested person. *Gilead*, 2015 WL 1903957, at *1; *see also Heraeus*, 633 F.3d at 594. Here, HID Textile's request for discovery meets each of these statutory requirements.

First, HID Textile seeks discovery from a Delaware resident. Datamars is a Delaware Corporation. *See* Lavenue Decl., Ex. 7. Thus, Datamars is "found" in

District of Delaware for § 1782 purposes. *See, e.g.*, *In re Liverpool Ltd. P'ship*, No. 21-MC-86-CFC, 2021 WL 3793901, at *1, 2021 U.S. Dist. LEXIS 161565, *2 (D. Del. Aug. 26, 2021) (finding that "the first condition of § 1782 is satisfied" because entity "is a Delaware corporation and therefore it resides and is found in this District").

Second, the documents and deposition testimony requested are "for use" in the Datamars EU Litigations, including the Datamars French Litigations which have a preliminary injunction hearing set for September 19, 2023. The "for use" requirement imposes a de minimis burden on the applicant to show that the requested discovery has some relevance to the foreign proceeding. *See In re Application of Sveaas*, 249 F.R.D. 96, 107 (S.D.N.Y. 2008) (holding that the standard for relevance is "broadly permissive"). The discovery HID Textile seeks is "for use in a proceeding before a foreign tribunal." *See, e.g.*, Roux-Vaillard Decl., ¶¶ 14-16. The courts of France, Germany, and the Netherlands where the Datamars EU Litigations are pending are considered "tribunals" under § 1782. *ZF Auto. US, Inc. v. Luxshare, Ltd.*, 142 S. Ct. 2078, 2091 (2022) ("[G]overnmental or intergovernmental adjudicative body constitutes a 'foreign or international tribunal' under § 1782[, which] are those that exercise governmental authority conferred by one nation."). Accordingly, HID Textile seeks discovery for use in the Datamars EU Litigations, including, for example, the infringement actions

8

before the French court, a foreign tribunal.

The requested discovery also has relevance to the foreign proceedings. "[U]nder ordinary circumstances the standards for discovery under [Federal Rules] should also apply when discovery is sought under [§ 1782]." *Bayer*, 146 F.3d at 195. "[D]istrict courts should treat relevant discovery materials sought pursuant to § 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify the denial of the application." *Id.* For example, information on the first sale or offers to sell of Datamars, Inc.'s LaundryChip line of products, other products that practice the patents at issue, or other public disclosure of the features disclosed in the EP 204 Patent or the '027 Patent would be critical for HID Textile's offensive defense that the EP 204 Patent is invalid.

Intellectual Property Code of French Law considers an invention "novel if it is not included in the prior art[, where p]rior art is everything that has been made available to the public before the filing date of the patent application" or the priority date. Code de la Propriété Intellectuelle [I.P.C.] [Intellectual Property Code] art. L611-11 (Roux-Vaillard Decl., Appx. C, at 1). While French Law has an exception for public disclosures made by applicant within six months prior to the filing date or the priority date, similar to the one-year exception available in the United States under 35 U.S.C. § 102(b)(1), such exception applies only to limited circumstances such as "a clear abuse of the inventor or his legal predecessor" or

"present[ation] by [the inventors or his predecessor] in an official or officially recognized exhibition." *Id.*, art. L611-13 (*see* Roux-Vaillard Decl., Appx. C, at 1-2); 35 U.S.C. § 102(b)(1). In other words, any public disclosure by anyone before the filing date or the priority date can be a basis for invalidation except in limited circumstances. Similar provisions are available under German and Dutch Law. Under German Law, prior art includes "all knowledge made available to the public before the [filing date] or [priority date]." Patentgesetz [PatG] [Patent Act] § 3, para. 1 (*see* Lavenue Decl., Ex. 12, at 3). German Law also provides an exception for public disclosures made by applicants within six months prior to the filing date or the priority date only for limited circumstances similar to those under French Law. *Id.*, § 3, para. 5 (Lavenue Decl., Ex. 12, at 3). Invalidating a European Patent under Dutch Law is adjudicated based on Articles 52 to 57 of the European Patent Convention. Rijksoctrooiwet [ROW] [Patent Act] art. 75, para. 1(a) (*see* Lavenue Decl., Ex. 13, at 22). The European Patent Convention provides similar definitions and exceptions: prior art includes all public knowledge as of the filing date or the priority date, and public disclosure within six months of the corresponding date is excused only under limited circumstances. European Patent Convention [EPC] art. 54, para. 1-2 (Lavenue Decl., Ex. 14, at 112); *id.*, art. 55, para. 1 (Lavenue Decl., Ex. 14, at 114). As consistently established by the patent law of each of France, Germany, and the Netherlands, any knowledge made available to the public before

10

the filing date or the priority date can invalidate a European patent in stark contrast to the U.S. patent law, which provides up to a year of grace period for disclosures made by the applicant. *See* 35 U.S.C. § 102(b)(1).

Upon information and belief, the subject matter claimed in the EP 204 Patent and the '027 Patent has been in the public knowledge at least as of March 14, 2017. On March 14, 2017, a news article was published on a news portal on the new release of Datamars, Inc.'s or Datamars SA's LaundryChip 401, a product that includes a double loop antenna configuration claimed in the EP 204 Patent and the '027 Patent. *See New UHF LaundryChip 401 by DATAMARS Textile Id*, El Mundo del ADC (Mar. 14, 2017), http://www.elmundodeladc.com/datamars-laundrychip-401/ (reporting the release of LaundryChip 401); Datamars Textile ID, *UHF LaundryChip$^{TM}$ 401*, YouTube (Nov. 12, 2018), https://youtu.be/zOLI_MXWhSs (showing an illustration of the double loop antenna design in LaundryChip 401); Lavenue Decl., Ex. 9, at 1, 8. Other news outlets followed suit shortly thereafter, announcing the release of LaundryChip 401 from Datamars, Inc. or Datamars SA. *See* Lavenue Decl., Ex. 9, at 2-4. While the news articles published before the earliest possible priority date of the EP 204 Patent and the '027 Patent—June 16, 2017—do not clearly show all features claimed in the two patents or even the double loop feature, availability of such news articles suggests that LaundryChip 401 may have been first sold, offered to be sold, publicly disclosed, advertised,

announced, made publicly available, or publicly used at least before the earliest possible priority date of the two patents. Indeed, inventors of the EP 204 Patent, Aurelian Moraru and Corneliu Ursachi, indicated in a public document regarding the claimed double loop design that they received "administrative and technical support" from Promar. Aurelian Moraru et al., *A New Washable UHF RFID Tag: Design, Fabrication, and Assessment*, Sensors 20:3451, at 15 (2020) [hereinafter Moraru 2020] (Lavenue Decl., Ex. 15, at 15); *see also* Aurelian Moraru et al., *Passive RFID Tags for Textile Items – Requirements and Solutions*, 2018 International Symposium on Fundamentals of Electrical Engineering, at 1 (2018) [hereinafter Moraru 2018] (disclosing the inventors' affiliation with Promar) (*see* Lavenue Decl., Ex. 16, at 1). Such public disclosure of LaundryChip 401, or any other products that practice the patents at issue, may be critical in establishing invalidity of the EP 204 Patent, and the discovery of such information would thus be "for use" in the Datamars EU Litigations.

Moreover, previous licenses, licensing attempts, purchase agreements, purchasing negotiations, and internal documentation related to the same (discoverable only by examining Datamars, Inc.'s relevant communications and documents and deposing relevant people from Datamars, Inc.) are also relevant to potential invalidity of the EP 204 Patent. Promar or Datamars, Inc. may have made statements regarding claim scope, patent value, or validity during or around

licensing or purchase negotiations, which may be relevant to potential invalidity of the EP 204 Patent. For example, the inventors of the EP 204 Patent appear to have actively published research papers on subject matter related to the features claimed in the EP 204 Patent as early as March 23, 2017, Aurelian Moraru et al., *RFID System with Passive RFID Tags for Textiles*, 10th Int'l Symp. on Advanced Topics in Elec. Eng'g (2017) [hereinafter Moraru 2017] (Lavenue Decl., Ex. 17), and working as a "manager" and "PhD Engineer" at Promar or Promar's affiliates, Moraru 2018, at 1 (Lavenue Decl., Ex. 16 at 1). Information regarding such publications or the inventors' understanding may have been exchanged during or about licensing or purchase negotiations, which may be relevant to potential invalidity of the EP 204 Patent as well.

As explained in the Roux-Vaillard Declaration, French courts will consider statements by a patent owner or potential licensees regarding the scope, coverage, value, or relative strength of the patents. Roux-Vaillard Decl., ¶ 15. French courts also consider the value of license/acquisition agreements and market success of patented products in assessing damages and patent validity. *Id.* Similar considerations are available under German law and European Patent Convention (and thus also under Dutch law). For instance, previous licenses, licensing attempts, purchase agreements, purchasing negotiations, and internal documentation related to the same, or statements made during or about such

matters can be relevant to the commercial or market success of European patents, which European courts examine when evaluating the inventive step and indicia of obviousness of a patent to decide its validity. *See, e.g.*, Lavenue Decl., Ex. 11 (AIPPI Question Q217 at 10; Ex. 10 at 10).

Continuing through the Datamars EU Litigations without this information would be unfair to HID Textile, which is why courts dependably find licensing and communications surrounding licensing discoverable. *See In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012) (licensing negotiations discoverable); *Sciele Pharma, Inc. v. Lupin, Ltd.*, No. 09-37, 2013 WL 12161442, at *2 (D. Del. Jan. 31, 2013) (holding that license agreements are discoverable); *High Point Sarl v. Sprint Nextel Corp.*, No. 09-2269-CM-DJW, 2011 WL 3241432, *5 (D. Kan. Jul. 29, 2011) (footnotes omitted) ("Other courts have found a patent holder's correspondence with third parties related to licensing negotiations to be relevant in patent infringement suits. Courts have found it relevant to ascertaining the extent of liability, formulating an appropriate litigation strategy, infringement and validity of the patents at issue, whether prior licenses are comparable, and calculation of reasonable royalty.").

Additionally, Section 1782(a) of the Judicial Code authorizes federal district courts to order the production of evidentiary materials for use in foreign legal proceedings, provided the materials are not privileged. *McKevitt v. Pallasch*, 339

F.3d 530, 531 (7th Cir. 2003). The documents and information HID Textile seeks

to defend itself are not privileged. Information on acquisition(s), purchase(s),

licensing, or assignment(s) is also not privileged and is routinely held to be

discoverable as explained above.

    For at least these reasons, the information HID Textile seeks is highly

relevant to the Datamars EU Litigations, not privileged, and should be produced.

    Third, HID Textile is the defendant in the proceedings before the French

court and the plaintiff in the Datamars German Litigation and the Datamars Dutch

Litigation, so it is an "interested person." *See Intel*, 542 U.S. at 256 ("No doubt

litigants are included among . . . the 'interested person[s]' who may invoke

§ 1782.").

    HID Textile's Application therefore satisfies the statutory requirements for a

§ 1782 application.

## B.    The *Intel* Discretionary Factors Weigh in Favor of Granting HID Textile's Application.

    In *Intel*, the Supreme Court provided a non-exhaustive list of factors that

district courts can consider when deciding whether to grant Section 1782

applications: (1) Whether "the person from whom discovery is sought is a

participant in the foreign proceeding" because "the need for § 1782(a) aid

generally is not as apparent as it ordinarily is when evidence is sought from a

nonparticipant"; (2) "[T]he nature of the foreign tribunal, the character of the

proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "[W]hether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) Whether the request is otherwise "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65. In this case, all four factors favor granting discovery.

### 1.   Datamars Is Not a Participant in the Datamars EU Litigations.

The first *Intel* factor favors applications seeking discovery from non-parties to the foreign tribunal. *See Intel*, 542 U.S. at 264 ("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782 aid."). In *Intel*, the Supreme Court expressed its concern that a party to a foreign litigation would use Section 1782 to obtain evidence that it could have obtained through foreign procedure in the foreign tribunal. *Id.* Datamars is not a participant in any of the Datamars EU Litigations, so this factor favors HID Textile's application. *See, e.g.*, *In re Chevron Corp.*, 633 F.3d 153, 162 (3d Cir. 2011) (finding that "[t]he first *Intel* factor favors allowing . . . discovery . . . because [the target of the discovery request] is not a participant in the [foreign] litigation"). Moreover, the fact that Datamars is a wholly owned subsidiary of Datamars SA, a party in the Datamars EU Litigations, does not render Datamars a *de facto* party to the

16

Datamars EU Litigations or otherwise preclude Section 1782 discovery from

Datamars. *See In re Belparts Grp., N.V.*, No. 3:21-MC-0062 (VAB), 2021 WL

4942134, at *4 (D. Conn. Oct. 22, 2021) (concluding that subsidiary of foreign

parent company that was participant in foreign proceedings could properly be

ordered to produce discovery under Section 1782 where the two were separate

legal entities); *In re Top Matrix Holdings Ltd.*, No. 18 MISC. 465 (ER), 2020 WL

248716, at *5 (S.D.N.Y. Jan. 16, 2020) (allowing Section 1782 discovery from the

subsidiary (and its CEO) of the parent company that was the party to the foreign

litigation notwithstanding the fact that both entities were likely in possession of the

same information).

Thus, even if Datamars and Datamars SA share a common identity, the two

entities should be treated separately for purposes of the first *Intel* factor.

### 2.     French, Germany, and Dutch Courts Are Receptive to Information Obtained Through United States Discovery.

A decision to grant a § 1782 application should "take into account the nature

of the foreign tribunal, the character of the proceedings underway abroad, and the

receptivity of the foreign government or the court or agency abroad to U.S. federal-

court judicial assistance." *Intel*, 542 U.S. at 264. "The party opposing discovery

bears the burden of persuading the court that the foreign tribunal would not

consider the discovery sought by the § 1782 order." *Gilead*, 2015 WL 1903957, at

*3 (citing *Chevron*, 633 F.3d at 162)*. In the absence of authoritative proof that a

17

foreign tribunal would reject evidence obtained with the aid of Section 1782, this factor weighs in favor of granting a Section 1782 petition. *See Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) ("[A] district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782.").

Importantly, many cases recognize the receptiveness of the EU courts to the use of discovery obtained through Section 1782:

- French Courts: *See, e.g.*, *In re Ex Parte Application of Societe d'Etude de Realisation et d'Exploitation Pour le Traitement du Mais*, No. 13-MC-0266, 2013 WL 6164435, at *3 (E.D. Pa. Nov. 22, 2013) ("[T]he Court is unaware of any policy observed by the French and English courts that would limit 'the receptivity of the foreign [court] to U.S. federal-court judicial assistance."); *In re MacDonell*, No. 2:17-MC-00189, 2017 WL 6448050, at *3 (E.D. Cal. Dec. 15, 2017) (finding that France's "ratification of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters" an indication of its receptivity); *Sveaas*, 249 F.R.D. at 107 (granting an application under § 1782 for actions pending in France).

18

- German Courts: *See, e.g.*, *Pfaff v. Deutsche Bank AG*, No. 20 MISC. 25 (KPF), 2020 WL 3994824, at *11 (S.D.N.Y. July 15, 2020) (finding second *Intel* factor favored discovery where the record "indicates that the German Court would be receptive to further evidence Petitioner obtains through this § 1782 proceeding"); *Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, No. 1:08-CV-269 (LEK/RFT), 2008 WL 3884374, at *7 (N.D.N.Y. Aug. 18, 2008) ("[W]e find neither any rejection nor offense taken by the German tribunals to a stateside discovery order."); *Heraeus*, 633 F.3d at 596 ("And there is no indication that the German court . . . would refuse to admit evidence that Heraeus obtained through U.S. discovery and could not have obtained by utilizing the procedures of German law for evidence gathering."); *Cryolife, Inc. v. Tenaxis Med., Inc.*, No. C08-05124 HRL, 2009 WL 88348, at *3 (N.D. Cal. Jan. 13, 2009) (concluding that the second *Intel* factor weighed in favor of discovery where there was "no basis to conclude that the German court would be unreceptive to the information requested by [the applicant].").

- Dutch Courts: *See, e.g.*, *In re Judicial Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd.*, No. 2:14-cv-00797, 2015 U.S. Dist. LEXIS 72544, *18, 2015 WL 3439103, * 7 (D. Nev. May 28,

2015), ECF No. 14 ("Historically speaking, courts in the Netherlands have been receptive to United States judicial assistance.") (citing In re Judicial Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd., No. 2:14-cv-07972014 U.S. Dist. LEXIS 181626, 2014 WL 7706908, *3 (D. Nev. June 4, 2014), ECF No. 1); *In re Duizendstraal*, No. 3:95-MC-150-X, 1997 U.S. Dist. LEXIS 16506, 1997 WL 195443, *2 (N.D. Tex. 1997).

Thus, French, Germany, and Dutch courts are generally receptive to information obtained through Section 1782 applications. *E.g.*, Roux-Vaillard Decl., ¶¶ 19-20. And the courts presiding over the foreign proceedings have given no indication that they would not consider evidence produced in response to a subpoena under § 1782. *E.g.*, *id.*, ¶ 22.

Here, HID Textile seeks information highly relevant to its invalidity/nullity arguments. For example, and as explained above, Datamars, Inc.'s knowledge of public disclosure regarding the LaundryChip 401 or other products that practice or disclose claimed features of the '027 Patent or the EP 204 Patent prior to the earliest priority date may be critical for proving invalidity of the EP 204 Patent. *E.g.*, *id.*, ¶ 14. Datamars, Inc.'s knowledge of acquisition(s), purchase(s), licensing, or assignment(s) of the patents may also contain critical statements or information

related to claim scope, validity, commercial success, or other indicia of nonobviousness. *E.g.*, *id.*, ¶ 15.

Thus, the second *Intel* factor favors this Court granting HID Textile's Application.

### 3. HID Textile Is Not Attempting to Circumvent Foreign Proof-Gathering Restrictions or Policies.

Under Section 1782, the documents and testimony sought do not need to be discoverable in the foreign court. *Intel*, 542 U.S. at 260-63; *Chevron*, 633 F.3d at 163 ("[T]here is no requirement that the material be discoverable in the foreign country for it to be discoverable pursuant to a section 1782 request."). It is in this context that the district court should consider whether the petitioner is seeking "to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. As noted previously, "only upon authoritative proof that a foreign tribunal would reject evidence obtained with the aid of Section 1782 should a district court refrain from granting the assistance offered by the act." *In re Esses*, 101 F.3d 873, 876 (2d Cir. 1996) (internal quotations omitted). In addition, the Third Circuit has typically found this factor in favor of granting discovery where the foreign court has not denied a moving party's access to documents at issue. *See INVISTA N. Am. S.a.r.l. v. M & G USA Corp.*, No. 11-1007-SLR-CJB, 2013 WL 1867345, at *4 (D. Del. Mar. 28, 2013) (citing *Chevron*, 633 F.3d at 163) ("noting that without a showing that the foreign

tribunal had denied the moving party access to these same documents, it would 'be a stretch to conclude that' the request for documents in a Section 1782(a) proceeding was an attempt to circumvent foreign restrictions that would be 'somehow [ ] offensive' to the foreign court"). Roux-Vaillard's Declaration also establishes that French courts will accept evidence from the discovery HID Textile seeks. Roux-Vaillard Decl., ¶ 21. Under French law, document production only exists in a very limited way for documents which can be identified individually before the court orders a party to produce them in a case. *Id.*, ¶ 17. Furthermore, under French law, French Court do not have authority to compel a foreign national residing and/or located outside France to appear in a French court to provide testimony, specifically when said foreign national is not a party to the French case. Id.; see MacDonell, 2017 WL 6448050, at *4 (finding no attempt to circumvent French proof-gathering restrictions or policies where "the French court could [not] compel the requested business entities to provide evidence or depositions since neither is a party to the French [proceeding]"). The First Instance Court of Paris (now Judicial Court of Paris where the Datamars French Litigations are pending) has also recognized the value of evidence gathered in the U.S. under Section 1782 discovery proceedings and decided that this evidence gathering mean was fully in compliance with French rules of civil procedure. Roux-Vaillard Decl., ¶ 20. Case law granting Section 1782 applications for use in German and Dutch proceedings

confirms the same. There is no suggestion that German or Dutch courts have denied access to the same sort of documents and information that HID Textile seeks through this Application. Indeed, German and Dutch courts have expressed receptiveness to evidence gathered through applications under § 1782, as discussed above.

In addition, there can be no question that this application is brought in good faith. As demonstrated above, Datamars, Inc. is uniquely positioned to provide relevant documents and information related to the discovery requests and deposition topics, especially given its apparent access to products and documentations related to the EP 204 Patent and products that may be covered by the EP 204 Patent. This Application is a critical component of marshalling the proof needed to succeed on claims of patent infringement against HID Textile and, therefore, there can be no dispute that HID Textile is proceeding in good faith. Thus, this factor weighs in favor of this Court's granting HID Textile's Application.

    **4.    The Scope of Information HID Textile Seeks is Commensurate with the Information's Relevance to the Datamars EU Litigations and Will Not Unduly Burden Datamars.**

Discovery under § 1782 is as broad as discovery under the Federal Rules of Civil Procedure. *See Bayer*, 146 F.3d at 195 ("[U]nder ordinary circumstances the standards for discovery under [Federal Rules] should also apply when discovery is

sought under [Section 1782].”); *In re Mota*, No. MC 19-00369, 2020 WL 95493, at *2 (D. Del. Jan. 8, 2020) (citing *In re Ex Parte Glob. Energy Horizons Corp.*, 647 F. App'x 83, 86 (3d Cir. 2016)) (“[A]ssessment assessment of the fourth factor is virtually identical to the familiar “overly burdensome” analysis that is integral to the Federal Rules.”). Relevance in this context “has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.” *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). “[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules.” Fed. R. Civ. P. 45 advisory committee’s note to 1970 amendment.

In *Intel*, the Supreme Court stated that “unduly intrusive or burdensome requests may be rejected or trimmed.” 542 U.S. at 265. Where, as here, an applicant’s requests concern “the precise subject matter of the underlying litigation,” the requests are not unduly burdensome. *See First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 23 (2d Cir. 1998); *see also In re Consellior SAS*, No. 13 MC 34, 2013 WL 5517925, at *3 (D. Conn. Oct. 2, 2013) (holding that it would not pose an “insurmountable burden on Respondents” to review and produce approximately 25,000 documents). In accordance with the Court’s directive to avoid unduly intrusive or burdensome discovery, HID Textile seeks

leave to serve the following documents and deposition testimony, respectively, on

Datamars, Inc. HID Textile seeks documents and information about:

1) the first sale or offer for sale of any products that practice or may practice the patents at issue in the Datamars EU Litigations and how such products practice the patents, including, but not limited to, the LaundryChip line of products (e.g., LaundryChip 401, LaundryChip 403) or other products marked as practicing the patents at issue;

2) public disclosure, advertisement, announcement, public availability, or public use of any features claimed in the EP 204 Patent or the '027 Patent, including the "double loop" feature, prior to June 16, 2017, the earliest possible priority date of the EP 204 Patent and the '027 Patent; and

3) acquisition(s), purchase(s), licensing, or assignment(s) of the '027 Patent, the EP 204 Patent, or their corresponding applications, including from Promar Textil Industries S.R.L. ("Promar"), the original assignee and/or applicant for the '027 Patent and the EP 204 Patent.

*See* Application, Exs. A, B. This information is directly relevant to and narrowly

tailored to HID Textile's invalidity positions in the Datarmars EU Litigations.

Moreover, a deposition is necessary because Datamars, Inc.'s understanding

and belief regarding any agreements and the procurement of EP 204 are applicable

to HID Textile as relevant and may not be contained in documents. Roux-Vaillard

Decl., ¶ 16. A deposition can also investigate Datamars, Inc.'s understanding and

belief about what products practice the EP 204 Patent and or the equivalent '027

Patent, or any prior disclosure or offer for sale of such products that may not be

contained in documents. Further, the full scope of the "administrative and technical

support" the inventors received from Promar may not be contained in documents either.

Thus, relevance of this information—which is explained in more detail above—is commensurate with the minimal burden its production will place upon Datamars, Inc. HID Textile requests a narrow set of specific documents related to relevant litigation information. Similarly, HID Textile's proposed deposition topics are narrow and concrete. Thus, the burden on Datamars, Inc. is outweighed by the relevance of the information HID Textile seeks, which HID Textile needs to fairly make out its case in France, Germany, and the Netherlands. This factor therefore favors this Court's granting HID Textile's Application.

## V.    CONCLUSION

For the reasons discussed above, HID Textile respectfully requests that this Court enter the proposed order submitted concurrently with this filing pursuant to § 1782(a) authorizing HID Textile to obtain limited discovery from Datamars, Inc. in substantially similar form as set forth in the proposed discovery requests attached to the Application as Exhibits A and B.

Dated:  August 4, 2023

*Of Counsel:*

**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**

Lionel M. Lavenue
*(pro hac vice application forthcoming)*
1875 Explorer Street, Suite 800
Reston, VA 20190
Phone: (571) 203-2700
Fax: (202) 408-4400

**SMITH, KATZENSTEIN & JENKINS LLP**

*/s/ Daniel A. Taylor*
Daniel A. Taylor (No. 6934)
Neal C. Belgam (No. 2721)
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
dtaylor@skjlaw.com
nbelgam@skjlaw.com

*Attorneys for Applicant HID Textile Services SARL*